```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT

ASIM GRABOWSKI-SHAIKH          )
AND CARA GRABOWSKI-SHAIKH,     )
                               )
        Plaintiffs,            )
                               )
        v.                     )   Case No. 2:24-cv-686
                               )
CONNECTICUT ATTORNEYS TITLE    )
INSURANCE COMPANY D/B/A        )
CATIC,                         )
                               )
        Defendant.             )
```

**OPINION AND ORDER**

Plaintiffs Asim Grabowski-Shaikh and Cara Grabowski-Shaikh are engaged in a property dispute with their neighbor in Woodstock, Vermont. The neighbor has sued Plaintiffs in state court, arguing that the property he owns extends to a certain line. Plaintiffs dispute the neighbor's claim, asserting that the area in question is theirs by prescription because of how they and their predecessors in title used the property over a period of years. The state court case is currently pending.

Before this Court is Plaintiffs' action against its title insurance company, Connecticut Attorneys Title Insurance Company d/b/a CATIC ("CATIC"), in which they seek a defense and indemnification with respect to their neighbors' claim. CATIC is denying coverage and has moved for judgment on the pleadings and/or for summary judgment. Plaintiffs have filed opposition

papers and affidavits, treating the motion as a summary judgment filing.  For the reasons set forth below, CATIC's motion is granted.

## Factual Background

Plaintiffs currently own real property at 4 Pleasant Street in Woodstock, Vermont.  Their Warranty Deed was recorded in the Woodstock Land Records on January 6, 2017.  Plaintiffs contend that they not only acquired the property by deed, but also through possession and use of an area that abuts the neighboring property at 2 Pleasant Street.

When Plaintiffs were considering purchasing 4 Pleasant Street, they visited the property with the seller's real estate agent.  The house was a Greek Revival with a white picket fence in front.  There was a break in the fence to the west of the house, where a driveway ran from the side of the house to the street.  To the immediate west of the driveway was a parking space for another car.  North of the parking space were mature shrubs and perennial gardens.  To the west of the parking space, in addition to mature shrubs and gardens, was a row of trees running north to south.

Before purchasing 4 Pleasant Street, Plaintiffs commissioned a title report from the law firm of Hayes, Windish & Badgewick, P.C.  On December 1, 2016, Attorney Steven Saunders, a member of that firm, completed a Preliminary Report

and Opinion on Title ("Preliminary Report"). The Preliminary Report did not identify any encumbrances on the title, claims of possession, or disputes over the property boundaries. Plaintiffs submit that the Preliminary Report, as well as the final report, did not state that Attorney Saunders had reviewed a survey dated July 18, 1979 ("the 1979 survey"). The 1979 survey was recorded in the Woodstock Land Records on March 20, 1981. Attorney Saunders allegedly told Plaintiffs there was no need to perform a survey.

Attorney Saunders was an agent of CATIC, and sold Plaintiffs a CATIC Expanded Protection Owners Policy. The policy states that CATIC "will defend Your Title in any legal action as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage in this Policy." The policy further provides that CATIC "will not pay for any part of [a] legal action which is not based on a Covered Risk or which is excepted or excluded from coverage in this Policy" and will not pay for any risk which "result[s] in no loss to You."

A covered risk under the policy includes when "[s]omeone else owns an interest in Your Title." The policy defines title as "the ownership of Your interest in the Land, as shown in Schedule A." Schedule A, paragraph 3, describes the land as 4 Pleasant Street, Woodstock, Vermont 05091, and references a more

detailed property description listing the most recent deed transfers.  The policy defines land as "the land or condominium unit described in paragraph 3 of Schedule A and any improvements on the Land which are real property."

The policy's Schedule B provides that the policy "does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of: … 1. Rights of persons in possession other than the Insured which are not shown by the Public Records."  CATIC refers to this as "the parties in possession exception."  Schedule B also provides that the policy "does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of: … 2. (i) Boundary line disputes, overlaps, encroachments, title to filled lands (if any) and all other facts which an accurate survey and inspection of the land would disclose and which are not shown by the Public Records."  CATIC refers this provision as the "survey exception."

The policy requires the insureds to initiate any claim by sending written notice to CATIC's address in Rocky Hill, Connecticut.  The policy requires that the claim be made "[a]s soon as You Know of anything that might be covered by this Policy."  The terms of the policy are governed by Vermont law.

After Plaintiffs moved into their new home in early 2017, they reportedly maintained the area west of the driveway to the

4

row of border trees. They allege that prior residents at 4 Pleasant Street similarly asserted ownership of that area through use and possession. Plaintiffs' uses included continually parking a car in the space next to the driveway. Prior to 2021, the owners at 2 Pleasant Street never objected to Plaintiffs' possession, use or maintenance of that area.

On February 18, 2021, James Zilian acquired title to the property at 2 Pleasant Street. On June 10, 2021, Zilian contacted Plaintiffs and told them that he had hired someone to cut down three pine trees. Plaintiffs responded by email on June 14, 2021, stating that they owned some of the trees and did not want them cut down. Zilian has also allegedly informed Plaintiffs that they are not permitted to park their cars in the space to the west of the driveway.

In July 2021, Zilian, through his attorney Benjamin Percy, provided Plaintiffs with a copy of the 1979 survey, which showed that the area where they were parking was on Zilian's property. Plaintiffs responded to Attorney Percy by explaining that they were acting consistent with the historic use of the property. On June 9, 2022, Attorney Percy provided Plaintiffs with a copy of Zilian's Warranty Deed and another copy of the 1979 survey, representing that Zilian owned the area in question.[1] Plaintiffs

---

[1] Plaintiffs' deed describes the western boundary of their property as the property owned by Zilian's predecessors in

again responded that they were acting consistent with the historic use and possession of the property.  In or about May 2023, Zilian commissioned a new survey which opined that the boundary lines were as described in his Warranty Deed and as depicted in the 1979 survey.

On May 23, 2023, Attorney Percy wrote to Plaintiffs and informed them that Zilian intended to improve his property up to the boundary line of Plaintiffs' property.  On May 25, 2023, Plaintiffs, through their attorney Michael Hanley, sent a letter to Attorney Percy stating that "whatever the parties' deeds may say, the boundary between 2 and 4 Pleasant Street was established over decades by the planting and maintenance of a row of trees, the establishment and maintenance of gardens, the mowing of a portion in warm weather, and the placement of snow during cold weather and the parking of automobiles."  On October 25, 2023, Zilian, through Attorney Windish, wrote to Attorney Hanley and stated that Plaintiffs were engaging in a boundary dispute by "claiming adverse possession over some undefined portion of Mr. Zilian's property."  The letter also demanded that Plaintiffs "cease and desist from parking their vehicles over the line."

---

title.  It is therefore Zilian's deed that, in the public records, dictates the precise location of the boundary line.

6

On October 29, 2023, Attorney Hanley wrote to Attorney Windish, reminded him that his former law firm had represented Plaintiffs when they acquired their property, and advised him to have the firm's professional liability carrier contact Attorney Hanley.  Attorney Hanley also noted Zilian's intention to make changes to the property, including erecting a fence and taking down trees.  Attorney Hanley advised that "[s]elf-help of this nature would be very unwise" and cited two Vermont criminal statutes.

On October 31, 2023, Plaintiffs, through Attorney Hanley, sent a notice of claim letter to CATIC ("Notice").  The Notice asked CATIC to defend and indemnify Plaintiffs in connection with Zilian's allegations.  The Notice also included a copy of the October 25, 2023 letter from Attorney Windish demanding that Plaintiffs "cease and desist" from parking their cars to the west of their driveway.

On November 7, 2023, CATIC wrote to Attorney Hanley confirming receipt of the Notice.  CATIC also requested additional information.  Attorney Hanley sent information in response to CATIC's request on November 21, 2023.  Included in that information was a copy of a 2022 survey showing that the area where Plaintiffs were parking a car was on Zilian's side of the boundary.  Plaintiffs object to the inclusion of that survey in the summary judgment record as inadmissible, citing Attorney

7

Hanley's assertion that the survey is privileged, confidential, and not to be shared with a third party. Plaintiffs also submit that surveys do not reflect title by prescription.

CATIC contends that nothing in the Notice or the attached survey, or any of the other information provided by Attorney Hanley, indicate that Plaintiffs have tried to quiet title or otherwise adjudicate their claim that they have acquired a portion of Zilian's property by adverse possession. Plaintiffs respond that they acquired title by prescription through the possession and use of the disputed area, both by themselves and their predecessors in title, and that the statute of limitations for recovery of lands had expired.

On December 4, 2023, CATIC notified Plaintiffs by letter that it was denying coverage. The letter noted that "Paragraph 1 of the Covered Risks of the Policy insures against a situation where someone else owns an interest in the title to the land insured." The letter also cited two exceptions to that provision: the parties in possession exception and the survey exception. CATIC asserted that the parties in possession exception "removes from coverage … claims of adverse possession or prescriptive easements of the land insured." The survey exception, as discussed above, removes from coverage any "facts which an accurate survey and inspection of the land would disclose and which are not shown by the Public Records." The

8

letter argued that both exceptions apply, allowed that there might be other reasons why coverage was not afforded, and specifically reserved all rights and defenses.

On June 7, 2024, Zilian filed a Petition for Declaratory Judgment and Injunctive Relief ("Petition") against Plaintiffs in Vermont Superior Court. The Petition seeks a declaratory judgment stating that Zilian owns the property to the west of Plaintiffs' driveway. The Petition specifically alleges that "[i]n or around June 2021, Respondents contacted Mr. Zilian regarding the location of the boundary line … claiming it was ten (10) feet westerly of the boundary line established by Mr. Zilian's Warranty Deed." The Petition also alleges that Plaintiffs have been parking their personal vehicles over the boundary line and are "essentially asserting a claim for adverse possession over an undefined section of Mr. Zilian's property."

Plaintiffs filed a Complaint with this Court on June 21, 2024. The Complaint seeks a declaratory judgment requiring CATIC to provide coverage related to Zilian's state court Petition. The Complaint also alleges breach of contract, bad faith, and violation of the Vermont Consumer Protection Act.

## Discussion

### I.  Legal Standard

CATIC submitted its current motion as a motion for judgment on the pleadings and/or for summary judgment. CATIC also filed

9

a statement of undisputed facts and evidence to support a summary judgment motion.  Plaintiffs were therefore on notice that the Court might treat the motion as a summary judgment filing.  *See National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 911 (2d Cir. 1988) (appellants were on notice that a motion might be treated as one for summary judgment where motion was styled as a motion to dismiss "or, in the alternative, for summary judgment" and affidavits were filed with the motion).  Moreover, Plaintiffs have filed a response to the statement of facts and their own affidavits.  The Court therefore construes CATIC's motion as one for summary judgment.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict

10

for the nonmoving party." *Id.* at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the party opposing summary judgment … draw all reasonable inferences in favor of that party, and … eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

## II.  Duty to Defend or Indemnify

### A.  Covered Risk

CATIC argues that it has no duty to either defend or indemnify Plaintiffs because Zilian's declaratory judgment action does not assert a claim against the property described in the title insurance policy. "Insurers have a duty to defend when the claim against the insured 'might be of the type covered by the policy.'" *Co-operative Ins. Companies v. Woodward*, 2012 VT 22, ¶ 10 (quoting *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366 (1992)). The Vermont Supreme Court has explained that "[i]n determining whether there is a duty to defend," a court must compare the language of the policy to the language of the underlying complaint. *Id.* "The most expansive duty under insurance liability policies is the insurer's duty to defend, but there is no duty to defend when there is no possible factual

or legal basis on which the insurer might be required to indemnify." *Id.*

Here, Zilian's state court action does not assert a claim against the Plaintiffs' title, insofar as their title is reflected in public records. His state court Petition alleges that the boundary line is established by his February 18, 2021 Warranty Deed, the 1979 survey, and the subsequent survey. The Petition also alleges that in challenging his claim to a certain boundary line, Plaintiffs are "essentially" asserting a claim for adverse possession.

The CATIC policy provides coverage when "[s]omeone else owns an interest in Your Title." The policy defines Title as ownership interest in the land as defined by the policy's Schedule A. Schedule A lists the street address and the attached property description, which in turn references the most recent deed transfers. Nothing in those deeds reflects Plaintiffs' claim to title by prescription.

Plaintiffs claim title to the disputed area because they, and their predecessors in title, allegedly used and possessed that area for a period of years. They also highlight that their deed included "all privileges and appurtenances." As CATIC notes, however, Plaintiffs and/or their predecessors never formally established title to the disputed area. Consequently, no public record reflects Plaintiffs' claim of title.

12

Because the policy defines Title as ownership interest in the land described in the publicly-recorded deeds, there has been no claim against Plaintiffs' title. To the contrary, Plaintiffs are now asserting a claim against Zilian's recorded title. Nothing in the CATIC policy suggests that a policy owner's unrecorded claim of title by means of prescription constitutes a covered risk. The Court therefore finds that CATIC has no duty to either defend or indemnify Plaintiffs relative to Zilian's allegations.

**B.   Waiver**

Plaintiffs argue that CATIC conceded in its denial of coverage letter that their conflict with Zilian constitutes a covered risk. They base this argument on the fact that the letter cited two exceptions to coverage without stating at the outset that the conflict is not covered.

Vermont law holds "that when an insurer elects to specify reasons for denying coverage it thereafter waives all other available grounds for denying coverage unless it expressly reserves the right to later raise other grounds." *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 18 (2004). Here, CATIC's letter expressly reserved the right to raise other grounds for denial. Consequently, CATIC may now argue that it has no duty to defend or indemnify because, in

13

addition to the arguable application of certain exceptions, the Zilian lawsuit is not a covered risk.

### C. Exceptions

CATIC further argues that, even assuming a covered risk, the two exceptions cited in the denial letter apply to this case. The first of those exceptions, the parties in possession exception, excludes from coverage claims involving persons in possession other than the insured, which possession is not shown by the public records. That exception would presumably apply if Zilian were claiming title through adverse possession or prescription to a portion of Plaintiffs' land, and his possession was not a part of the public record. But that is not this case. Here, it is Plaintiffs who claim to be in possession of a portion of Zilian's recorded land, and whose claim is not a part of the public record. The Court therefore finds that this first exception does not apply.

The second exception, the survey exception, excludes boundary line disputes which an accurate survey and inspection of the land would disclose, and which are not shown by the public records. Plaintiffs did not perform a survey, allegedly on the advice of their attorney, who also served as an agent of CATIC.[2] They now contend that the 1979 survey is a part of the

---

[2] Addressing a similar survey exception, this Court previously noted that "nothing requires a title insurer to conduct its own

14

public records which, together with an inspection of the property, would have shown a boundary dispute. The 1979 survey, standing alone, does not show a boundary dispute. Consequently, this is precisely the situation that is excluded from coverage: a boundary dispute that is not reflected in the public records and that would only be discovered through a land inspection and a revised survey. The Court therefore finds that CATIC properly applied the survey exception.

CATIC also contends that Plaintiffs are not entitled to either a defense or indemnification because they will have suffered no loss. The policy excludes coverage from any risks "that result in no loss to You." The Zilian state court action alleges that he owns the property to the edge of Plaintiffs' driveway, and that their use of anything to the west of that line constitutes trespassing. If Zilian is ultimately successful, the state court will have decided that Plaintiffs' claim of title through prescription is without legal merit, and that they never owned the land in question. If Plaintiffs succeed in state court, their property will thereafter exceed the boundaries specified in their current deed, and the ruling

---

survey as a condition precedent to offering title insurance; instead, the decision to request a survey in advance of a purchase lies squarely with the insured." *Johnston v. Connecticut Att'ys Title Ins. Co.*, No. 5:13-CV-229, 2014 WL 1494016, at *9 (D. Vt. Apr. 16, 2014) (Reiss, J.).

will confirm their belief as to the location of the boundary line at the time of purchase.  Thus, regardless of whether Plaintiffs win or lose in the state court case, they will have suffered no loss with respect to their title.

For each of these reasons – the lack of a covered risk, the application of the survey exception, and the lack of any actual loss by Plaintiffs regardless of the outcome in state court – the Court finds that CATIC has no duty to either defend or indemnify under the terms of the policy.[3]

**III. Remaining Claims**

In addition to the declaratory judgment requested in Count I, Plaintiffs' Complaint asserts claims for breach of contract (Count II), bad faith (Count III), and violation of the Vermont Consumer Protection Act (Count IV).  Each cause of action is premised on the allegation that CATIC breached its to duty defend and indemnify Plaintiffs under the policy.  Because the Court finds no such breach, each cause of action is dismissed.

**Conclusion**

For the reasons set forth above, CATIC's motion for judgment on the pleadings and/or for summary judgment (ECF No.

---

[3]  Because the Court finds in CATIC's favor on the question of coverage, it declines to address CATIC's arguments that the notice of claim was untimely and that Zilian is a necessary party.

8), construed as a motion for summary judgment, is granted. This case is dismissed.

    DATED at Burlington, in the District of Vermont, this 6th day of January 2025.

                                      /s/ William K. Sessions III
                                      Hon. William. K. Sessions III
                                      U.S. District Court Judge